The final argued case before the court today is Ricci v. Merit Systems Protection Board, Ms. Kleinbach, you have three minutes for rebuttal. Yes, Your Honor. Okay, you may proceed. Your Honor, and may it please the court, my name is Sarah Hainbach. I represent the petitioner, Ms. Helen Z. Ricci. On page Roman numeral 6 of the red brief, the MSPB notes that before the MSPB, Ms. Ricci argued that ICE had continued the Boston PD's, quote, discrimination and retaliation. But Ms. Ricci's Federal Circuit Rule 15c filing doesn't indicate she's raising a discrimination claim. Don't interrupt me. And as far as I can tell, you haven't raised the issue in your briefing. Has Ms. Ricci abandoned her discrimination claims? Ms. Ricci does not raise her discrimination claims against DHS. The 15c form is correct that she only raises, is she affirmatively waiving them? Your Honor, she does not raise any discrimination claim against DHS. The question was, has she abandoned them? Are they waived? Yes, they're waived, Your Honor. On pages 8 to 9 of the blue brief, you argue that because Ms. Ricci's notice NOPA warned that she might be debarred and her purported misconduct was serious enough to merit debarment, that when the appendix, DHS doesn't sustain the NOPA rather than the NOPA's charge in all specifications. Doesn't that impact your argument? Your Honor, page 17 of the appendix is the letter from Mr. Schwing, which does sustain and finalize, we interpret to sustain and finalize the charge against Ms. Ricci. The letter states that Ms. Ricci was being found unsuitable for employment in the agency and that her employment would interfere with the ability of the agency to effectively carry out its law enforcement mission. But doesn't that letter support the conclusion that it was just that particular position that she was being found unsuitable for employment in the agency? Yes, it does. It does support the conclusion that Ms. Ricci was being found unsuitable for employment in the agency. Second, the agency may find the applicant unsuitable for employment throughout the agency. This is an appealable suitability action. Where did they say throughout the agency? In the notice of proposed action, which is a document that is only sent in the context of a suitability action, not in a non-appealable, non-selection. The NOPA is on page 3. When that information was revealed, this is the second paragraph, which is serious enough to warrant a proposal that you be found unsuitable for the above reference position. And if you go on to the next line, Your Honor, and appointment to all positions with DHS ICE for a period of not more than three years. They point to the position she applied for but say she would also be found unsuitable for all positions within the agency. And neither the letter from Mr. Schwink or the letter from Ms. Spruill, they both rescind the employment offer and neither one of them says now you are welcome to apply for positions within the agency. In fact, did she ever try to apply? Your Honor, no, she did not try to apply for positions within the agency. She followed the directions of the notice of proposed action. On page 16 of the blue brief, you argue that MSPB's interpretation of debarment as excluding de facto debarment is rulemaking under the APA. Why are you arguing rulemaking? What authority do you have? Why didn't you argue regulatory interpretation? Your Honor, an agency engages in rulemaking when it creates a rule that creates substantive obligations, compliance obligations for a broad class of people under bimetallic and disabled American veterans. And Coalition for Common Sense both say that the most important thing in determining whether an action is a substantive rulemaking or merely a rule or simply interpretive is whether the action has a binding effect on private parties. Do you have any authority for that? Is the MSPB even an agency? Yes, my understanding is the MSPB is an agency set up by the executive branch. You see on page 17 of the red brief, the MSPB says under 5 U.S.C. 554A2, most cases heard by the MSPB, including this case, are excluded from APA coverage. Yes, but under regulation section 7703, an employee or applicant adversely affected or grieved by an MSPB final order or decision may obtain judicial review. Because it's an adjudication body, it's not an agency, right? Yes. Well, you just gave away the argument. Well, at least that one argument. But what about the fact that OPM actually issued a regulation doing away with constructive suitability determinations? Maybe you think OPM's regulation is wrong or its regulatory authority was ignored by what you say was a de facto constructive suitability determination. But doesn't that pose a problem for you, that there is a regulation on the books? In reading the 2008 regulations from OPM, we see that OPM does not mention de facto or constructive debarment. But we don't interpret the failure to mention as a prohibition of the existence of de facto or constructive debarment. In fact, a commenter before the revision suggested that the OPM require agencies to label their actions. The OPM rejected this suggestion. And does not require that agencies label their actions as either debarment or non-appealable non-selections. Didn't the ICE letter that you've been referring to that talked about the three-year unsuitability, didn't it say that her conduct could be grounds for a debarment proceeding, not that she was actually being debarred? Your Honor, the letter also refers back to the Notice of Proposed Action, which also said she could be found unsuitable for employment. Nothing in either letter negates the inference that she would be found unsuitable if she were to apply again.  The agency has followed all the steps that are laid out in the OPM regulations to find an applicant unsuitable. The agency sent Ms. Ritchie a Notice of Proposed Action, which is only sent in an unsuitability action. We've already discussed the language of the Notice of Proposed Action, and it sent not one but two letters of rescission, sustaining and finalizing the charges in the Notice of Proposed Action. DHS may argue that mere inartful language will not transform a non-appealable non-selection into an appealable debarment action. But in the other cases where the court has found inartful language, such as Gantt and Rodriguez, neither applicant received a Notice of Proposed Action. We find that the fact that the Notice of Proposed Action is key and shows that Ms. Ritchie was indeed debarred. In fact, in Rodriguez, the agency said to Mr. Rodriguez that he had the right to appeal, but then offered him a job. The court in that case found that Mr. Rodriguez had not been debarred because of being offered a job. So let me ask you this. Was there a proposal that Ms. Ritchie be debarred? Because that's the language in Appendix 13. It may be serious enough to warrant a proposal. Was there a proposal? The two letters for Mr. Schwink and Ms. Sproul sustain the suggestion of a proposal in the NOPA. A suggestion of a proposal? They confirm the finding that she could be found unsuitable. Nothing suggests that she has the right to apply for a job, nor that she would be chosen for that job. So as I understand, you're saying your position is that it is the triggering event of the Notice of Proposed Action that you say makes this different and somehow pulls it out from the OPM regulations? The Notice of Proposed Action and the letters after follow the OPM regulations. The OPM regulations explicitly say that agencies, when they wish to engage in an unsuitability action, should send a Notice of Proposed Action and then give the applicant a chance to respond, which our client did, and then send a letter sustaining the findings in the Notice of Proposed Action. This is what occurred. So reading the letter, the communication from DHS with the regulations, shows us that Ms. Ritchie was debarred, whether the agency wants to call it a debarment or not. But she never got any formal notice that she was debarred, right? We interpret the Notice of Proposed Action and the letters to be that formal notice. Okay. Let's discuss your pre-oral argument motions. You were ordered to file notices of appearance within seven days of January 21st, but failed to do it. Why? Your Honor, I can address that during rebuttal, if that's okay. No, you can go ahead right now. We'll let you. I'll restore your rebuttal time. I don't know the reason for the delay, but I would confer with my co-counsel and check during rebuttal, if that is okay with your Honor. Okay. I mean, I think the point here is that being allowed to argue as a student, and I give you credit, you don't seem very nervous and you're very articulate, but one of the most important things is following the rules of the court and knowing the rules of the court. And there just seemed to be a lot of rules that were ignored along the way, and it wasn't just that last one. Your Honor, I apologize and will do my best. Moving back to, can I reserve the rest of my time for rebuttal? Yes, you can. If you weren't a student, the court wouldn't have been as nice to let you enter a late notice. May it please the court. And I do want to thank the government for not objecting to the student argument and any delay in it. Because I think it's valuable. Yes. Okay. So in the Folio case, this court said that MSPB review of suitability is within the constraints of, and that's in quotes, within the constraints of OPM suitability regulations. And that's a very succinct but descriptive phrase of the interaction between OPM regulations and MSPB review, because there's no statutory right to challenge a suitability determination. And so in 2008, OPM made clear that they believe MSPB was acting outside of the strictures of its rules, and rewrote the rules. And one of the things it did was it added 5 CFR 731.203B, which we believe is dispositive of this case. And that provision provides that a non-selection for a specific position is not a suitability action. Even if it's based on suitability reasons. Yeah, but here's the problem is that the regulation does tell you how to do it, if you want to do a debarment or a suitability determination, one of which is the notice of proposed action, and then a finding that the proposed action deems the person unsuitable. I mean, would that normally have occurred if the only determination was you're not being hired for this job? It does seem like they went through the formalities, even if they have some language that seems to say, well, you know, there's still another piece of formality left. But why go through all those formalities if you're just rejecting them for a particular job? I agree. They went through the suitability process. They could have imposed a debarment. They gave the correct notice that was required on the regulations, so they could have implemented a debarment. They chose not to. And that was within their discretion to choose not to. So Ms. Ritchie is not prohibited from reapplying. She's not prohibited from applying for any DHS jobs, and she's not even prohibited from reapplying for this DHS job. But I don't think you completely answered my question. If a normal applicant comes in, applies for a job, and they're deemed not suitable for that position, is there normally a notice of proposed action that goes along with that? Not necessarily. I want to make sure I answer your question. But one thing that must happen is if they are selected from the certificate, if they're being considered from the certificate, and this investigation begins, there must be, under the OPM regulations, a determination one way or the other about suitability. So that's the difference between a suitability determination and a suitability action. There must be a determination. You must make a conclusion, but the problem is it's the notice of proposed action that throws me. That doesn't normally happen in an employment hiring context, right? I think you're right. So why did they do it here if they weren't going for debarment? Well, it indicates to me that they were considering debarment as a possible outcome. Because if they were considering debarment and they had not given her the notice of proposed action, it would have been procedurally defective. So by going through the process, they left open the possibility that she could be debarred. In the end, after receiving her responses to the notice, they chose not to do so. Well, that seems just a little bit odd to me because the letter that actually went out said this would be a basis for debarment. I mean, how much farther do they have to go? Nobody who's going to look at it for the next hiring is going to say, oh, yeah, we're going to hire this person, right? Well, I think the notice should have put her on notice that this is something we're considering, debarment. So I think that was actually correct. But the letter, at the end of the day, did reach a conclusion that this would be a basis for debarment. It did. Well, it reached a conclusion that she had been determined unsuitable under the regulations. But it did not announce any action against her, including it did not debar her. There's no prohibition on the petitioner reapplying or applying for any other job that she wants to apply for. Are you aware of anybody else who's ever gone through a process like this and then later applied to ICE and was able to get a position? I'm not personally aware of that occurring. Based on this record, we don't know. Petitioner's counsel just stated that she's not applied for any other job. So based on this record, we don't know what would happen if she did apply. Petitioners correct that these investigations can be considered in the future for positions that are at the same risk level. Unless it's a higher risk level position, they could reuse this investigation. Do you agree with your friend on the other side who says that these things are kept on record for three to five years so that while there might not be a formal debarment, in other words, that perhaps the MSPB's original view of constructive debarment made some sense in those circumstances? Well, I would say that the petitioner's correct that they don't have to start a new investigation every time there's an application from someone. They can go back and look at the old investigation. However, each time the applicant needs to fill out new forms, a new SF-86, if anything's changed, she can indicate that. In this case, petitioner indicates that she has multiple lawsuits pending against her former employer. So litigation can change things, and to the extent that she prevails in one of those lawsuits, that would be something worth noting if she reapplied. In that respect, maybe that might even be part of the agency's thinking on not debarring her, is that things can change and there are these pending lawsuits out there. Do you agree with me that the MSPB is not an agency for purposes of the APA? That's correct. Just for clarity, there's an exception that when it comes to administrative law judges, when they're reviewed, that's an APA process. Other than that, the MSPB is not an APA agency. So MSPB hearings are not APA hearings. Okay. Your Honor, first I want to apologize again for our mistake. Professor Addison-Francois takes full responsibility and says it was because we interpreted the filing of the response to the notice of oral argument, plus our motion for leave, as sufficient a notice to appear. Moving back to the APA claim, as we discussed, Your Honors, you do not need to make this... Let me interject there. I knew that, of course. I asked that question because you're counsel, and as counsel, for the rest of the 50 years or 60 years you've practiced, it's on you. 60 years. That's a long time. I want to move back to the discussion of constructive debarment. As you mentioned in talking with my colleague on the other side, what matters is whether or not the agency calls the action of debarment. Ms. Ritchie does not seem to be able to apply to other jobs. This Court has considered the issue of constructive agency action before. In Upshaw, the Court found that the agency, that the Court could infer from the written record that the rescission of the offer of employment could have been a constructive suitability determination. As you know, a suitability determination is different today than a suitability action under the revised OPM regulations, but Upshaw was applying the old law before the revision, so a finding of inferred suitability determination then could lead us to the conclusion that an inferred suitability action could occur today. This idea was furthered in Solis in 2017, where an employee was terminated during his probationary period. When he appealed the termination, the Court found that he had not raised a constructive debarment argument sufficiently, but had he raised it, it could have been available to him. The Court had a choice in the Solis case of completely negating the existence of constructive suitability as the agency would have us do today, but instead it just found that Mr. Solis had not raised it sufficiently. The real question here is whether or not an agency may limit the Board's and the Court's jurisdiction. Agencies can make their own employment decisions, but they may not decide to mask one sort of employment decision which is appealable as one that is not appealable in order to avoid the review that the applicants are entitled to under the law. Thank you. I have a rhetorical question, which is why would you ever quit practicing law when you can have this much fun? The cases will be submitted. This Court is adjourned.